IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TED KNOX, | ) | |
| # N92676, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-CV-0382-SMY |
| | ) | |
| JACQUELINE LASHBROOKS, | ) | |
| CRAIG ASSELMEIER, | ) | |
| STEVEN NEWBOLD, | ) | |
| DR. MCSHAN, | ) | |
| GAIL WALLS, | ) | |
| TRACY LEE, | ) | |
| JAELEN MCWILLIAMS, | ) | |
| TARA CHADDERTON, | ) | |
| BEN DAHLEM, | ) | |
| SHELBY DUNN, | ) | |
| LEE GREGSON, | ) | |
| LAKESHA HAMBY, | ) | |
| SUSAN KIRK, | ) | |
| AMY LANG, | ) | |
| NICOLE MARSHALL, | ) | |
| HEATHER MCGHEE, | ) | |
| ALLYCE MOLL, | ) | |
| MARTHA OAKLEY, | ) | |
| BRENDA OETJEN, | ) | |
| RON SKIDMORE, | ) | |
| BRANDY TRIPP, | ) | |
| AUGUSTA WILLIAMS, and | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| | ) | |
|       Defendants. | ) | |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

      Plaintiff Ted Knox, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brings this action for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he did not receive adequate care for a dental emergency, that some staff retaliated against him in relation to his dental

1

issue, and that Defendants Lashbrook and Wexford maintained policies or procedures that condoned the harms he sustained. He seeks monetary compensation and a recommendation that Wexford implement an appropriate dental care policy.

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## **The Complaint**

Plaintiff makes the following allegations in the Complaint: Plaintiff received inadequate care for an infected abscessed tooth over the course of approximately three weeks from April 23, 2017, through May 18, 2017. The issue started on April 23, 2017, when Plaintiff noticed that one of his front teeth became problematic (Doc. 1 at 9). He submitted a request to the healthcare unit for assistance, because he has a documented history of periodontitis gum disease related to his diabetes (*Id.*). After waiting a few days, Plaintiff submitted a request for urgent care because the tooth condition had worsened (*Id.*). His pain was so great it interfered with his ability to sleep, read, write, clean, or attend to other daily tasks (*Id.* at 9-10). He spit blood and pus and was unable to properly brush his teeth due to the infection (*Id.* at 10). Plaintiff's cellmate expressed dismay because the infection caused his breath to smell (*Id.*).

A week passed with no care rendered (*Id.*). On April 30, 2017, Plaintiff awoke to find his pillow covered in blood (*Id.*). He notified Nurse Dunn that his tooth was dangling and that he had constant blood and pus discharge, but she denied care (*Id.*). Plaintiff submitted a third request for urgent dental care that same day (*Id.*).

2

On May 4, 2017, Plaintiff notified Defendant Lang of the worsening infection (*Id.* at 11). She refused to look at his tooth because she had no dental knowledge and she also refused pain medication (*Id.*). Defendant Tripp followed suit on May 5, 2017 when she denied care and teased Plaintiff to put the tooth under his pillow for the tooth fairy (*Id.*). Defendant Oakley also refused care on May 5, 2017 and indicated that Plaintiff had to wait his turn for care just like any person (including her) (*Id.* at 11-12).

Plaintiff asked Defendant Oetjen for care on May 6, 2017, but she refused assistance (*Id.* at 12). Later that day, Defendants Oakley and Moll both refused care on the pretext that nothing could be done while the institution was on lockdown (*Id.*). On May 7, 2017, Defendants Chadderton, Marshall, and McGhee all refused care and told Plaintiff he would have to wait to see the dental unit (*Id.* at 12-13). The same continued on May 8, 2017 when Defendants Hamby, Lang, Lee, and Kirk all denied assistance of any form (*Id.* at 14-15).

On May 9, 2017, Defendants Chadderton and Lang denied care (*Id.* at 15-16). Defendant Skidmore characterized the issue as a non-emergency at Menard but offered to get a pliers for the "old school plier treatment" (*Id.* at 15). Plaintiff lodged a fourth request for urgent dental care (*Id.* at 16).

Defendants Dunn and Lang refused care on May 10, 2017 and Lang threatened to write Plaintiff a ticket or send him to segregation if he kept complaining about his tooth (*Id.* at 16). Plaintiff reported Lang's threat to Defendant Baylon and Baylon went to notify Defendant Murray of the tooth issue (*Id.*). Plaintiff also complained to Defendant McGhee that same day and sent emergency grievances to Defendant Lashbrook and the Administrative Review Board (*Id.*).

Defendant Hamby refused care on May 11, 2017 because the institution was still on lockdown (*Id.* at 17). An unknown officer notified Plaintiff that his dental appointment was

3

rescheduled due to lockdown (*Id.*). Despite the lockdown, there was movement about the facility from April 23, 2017 to May 15, 2017 (*Id.* at 17-18). Plaintiff's requests to Defendant Lang for care on May 11, 2017, went ignored (*Id.* at 18).

Defendant Dahlem refused care on May 12, 2017 (*Id.* at 19). Defendant Oakley also refused to accept a mental health grievance form from Plaintiff on this day because mental health could not address dental problems (*Id.*). Later in the day, Defendant Gregson refused care and told Plaintiff he was silly to seek help via mental health requests (*Id.* at 19-20).

Plaintiff declared a crisis on May 13, 2017 due to prolonged and worsening pain and suffering (*Id.* at 20). Defendant Dunn refused to make the crisis official, but Officer Epplin subsequently contacted a crisis team member (*Id.*). Team-member Defendant McWilliams came to Plaintiff's cell on May 13, 2017, and shortly thereafter, an unknown officer took him to the shower bull-pen (*Id.*). Although McWilliams promised to contact the dentist and to inform his boss (Defendant McShan) of the problem, the dentist was not contacted (*Id.* at 21). Defendant McShan made no referral to the dentist (*Id.*). Lieutenant Englarge claimed that he could see and smell the infection and would contact healthcare himself (*Id.* at 22). On May 14, 2017, Defendants Oetjen, Marshall and McGhee all declined assistance (*Id.* at 22). Plaintiff wrote a follow-up to Defendant Lashbrook about the status of his emergency grievance (*Id.*).

The lock-down ended on May 15, 2017 and other offenders began to see the dental unit (*Id.* at 23). However, on that day, Defendants Lang, Hamby, and Dunn continued to ignore or refuse Plaintiffs requests for assistance (*Id.*). On May 17, 2017, Defendants Hamby, Williams, and Moll declined assistance (*Id.* at 24).

As Plaintiff ate on May 18, 2017, his tooth broke and bled profusely (*Id.* at 24). He was quickly escorted to the healthcare area (*Id.*). A dental assistant cleaned the bleeding area, and

4

Defendant Asselmeier then entered the room (*Id.* at 24-25). Asselmeier informed Plaintiff that he would always be at the bottom of the list for care if he kept his teeth, that he would not get an MRI to determine the extent of the infection, and that his only treatment option was removal of all teeth (*Id.* at 25). Plaintiff received a prescription for antibiotics and acetaminophen (*Id.*).

On May 19, 2017, Defendant Dunn refused Plaintiff's request slip for a soft diet and told him he would regret initiating a grievance against her (*Id.* at 26). Defendant Steelhorn, a mental health supervisor, interviewed Plaintiff on that day and noted that she could smell the infection (*Id.*). She indicated that she would check into a soft diet but warned Plaintiff it would not be tasty (*Id.*). Plaintiff followed up with Defendant Lashbrook a final time about his May 10, 2017 grievance, but he received no response (*Id.*).

Defendant Wexford has an official policy of denying examinations and other medical care to inmates during institutional lockdowns (*Id.* at 27). Defendants Oakley, Moll, Kirk, Chadderton, Dunn, Hamby, Asselmeier and Newbold all acted or failed to act because of the policy or lack thereof (*Id.*). Defendant Wexford should have a policy or procedure to provide treatment for diabetic prisoners with periodontal gum disease even during a lock-down (*Id.* at 28-29). Because they did not have a practice of treating prisoners with serious dental conditions, Plaintiff was forced to endure pain and suffering from April 23, 2017 to May 17, 2017 (*Id.*). Defendant Lashbrook participated in the harmful custom or policy by allowing Plaintiff's condition to go untreated during the lockdown (*Id.*).

Defendant Gail Walls failed in her position as healthcare administrator to respond to any of Plaintiff's requests for urgent care from April 23, 2017 onward (Doc. 1-1 at 1). Walls was on notice of the severity of Plaintiff's periodontitis because he had x-rays documenting the condition in his medical file (*Id.* at 1-2). Walls maintained a policy or procedure of providing "arbitrary"

healthcare during lockdowns (*Id.* at 2-3). Her behavior prolonged Plaintiff's pain and suffering, and she unequivocally knew that was the case (*Id.* at 3-4).

Defendants Dunn, Hamby, and Lang retaliated against Plaintiff for his ongoing complaints about his tooth (*Id.* at 4-5). Each of the three Defendants told him that they either did not care he wrote a grievance about them or that he would regret it (*Id.*).

Based on the allegations in the Complaint, the Court finds it convenient to divide this action into the following Counts:

> **Count 1:** **Eighth Amendment deliberate indifference for failure to provide timely treatment for Plaintiff's abscessed and infected tooth against Defendants Lashbrook, Asselmeier, Newbold, McShan, Lee, McWilliams, Chadderton, Dahlem, Dunn, Gregson, Hamby, Kirk, Lang, Marshall, McGhee, Moll, Oakley, Oetjen, Skidmore, Tripp, and Williams.**
>
> **Count 2:** **Eighth Amendment deliberate indifference via a policy or practice, or lack thereof, of declining appropriate dental care by Defendants Wexford and Lashbrook.**
>
> **Count 3:** **Eighth Amendment deliberate indifference against Defendant Gail Walls for her unsatisfactory response to Plaintiff's grievances about his emergent dental care needs.**
>
> **Count 4:** **Retaliation by Defendants Dunn, Hamby, and Lang for Plaintiff's grievances about his dental issues.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

## Preliminary Dismissals

Steven Newbold is named as a defendant in the case caption, but there are no allegations

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

against him. Under Federal Rule of Civil Procedure 8, the Complaint must include a short, plain statement of the case against each individual. Merely naming a party in the caption of a Complaint is not enough to state a claim against him. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Further, Plaintiff's failure to assert a specific act of wrongdoing as to this individual does not meet the personal involvement requirement necessary for Section 1983 liability. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Accordingly, Defendant Newbold is **DISMISSED** without prejudice.

Additionally, Plaintiff discussed conduct by Baylon, Murray, Epplin, Englarge, and Steelhorn, but they are not identified as defendants in the case caption. The Court will not treat individuals not listed in the caption as defendants, and any claims against them are **DISMISSED** without prejudice. *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be specified in the caption).

## Discussion

### Count 1

The Eighth Amendment prohibits the cruel and unusual punishment of inmates and imposes an obligation upon prison officials to provide them with adequate medical care for serious medical conditions. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). An Eighth Amendment claim for the denial of medical care has an objective and a subjective component. The objective component requires an inmate to demonstrate that he suffers from an "objectively, sufficiently serious" medical condition. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A condition is considered sufficiently serious if failure to treat it could result in the unnecessary and wanton infliction of pain. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective component requires Plaintiff to demonstrate that

each individual defendant responded to his serious medical condition with deliberate indifference. This occurs when an official "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno*, 414 F.3d at 653.

The doctrine of *respondeat superior* is inapplicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Therefore, liability hinges on personal responsibility for the deprivation of a constitutional right. *Id*. at 740 (citation omitted).

The decision of a medical professional to do nothing, even though she knows that a patient has a serious medical condition requiring prompt treatment that the professional is capable of and responsible for providing, amounts to deliberate indifference. *Dobbey v. Mitchell-Lawshea et al.*, 806 F.3d 938, 940 (7th Cir. 2015). Any minimally competent dentist who knows that a patient has reported an abscess also knows that if the report is correct, the patient needs prompt medical treatment. Therefore, a dentist demonstrates deliberate indifference by failing to treat the patient promptly while knowing that the patient may well be in serious pain that is treatable.

A correctional officer who is aware of complaints of pain and does nothing to help a suffering prisoner obtain treatment is likewise exhibiting deliberate indifference. His failure to act cannot be excused on grounds of cost or danger of acting, *see, e.g., Johnson v. Doughty*, 433 F.3d 1001, 1011–13 (7th Cir. 2006); *Berry v. Peterman*, 604 F.3d 435, 440–41 (7th Cir. 2010), as there is neither cost nor danger.

Here, Plaintiff alleges that he received no treatment for an infected abscessed tooth from April 23, 2017 through May 18, 2017. He also alleges that he complained of his condition to Defendants Lashbrook, Asselmeier, McShan, Lee, McWilliams, Chadderton, Dahlem, Dunn, Gregson, Hamby, Kirk, Lang, Marshall, McGhee, Moll, Oakley, Oetjen, Skidmore, and Tripp. These allegations are sufficient for Count 1 to proceed beyond screening against these individuals.

**Count 2**

Wexford (a corporate medical contractor) may be held liable for deliberate indifference if an inmate can establish that he has been harmed by a custom, policy, or practice of Wexford. See, *Shields v. Illinois Dept. of Corrections,* 746 F.3d 782, 796 (7th Cir. 2014). While a few discreet incidents of less than ideal care cannot be strung together to establish a policy or practice, a corporate medical provider may be at fault for failing to make a policy to address serious medical conditions. *Glisson v. Indiana Dep't of Corr.,* 849 F.3d 372, 381 (7th Cir. 2017). *Id.* at 381. Plaintiff's allegations with respect to an existing custom and practice by Wexford regarding denying inmates medical care during lockdowns are sufficient to state a deliberate indifference claim against Wexford. Accordingly, Plaintiff's claim against Wexford in Count 2 will be allowed to proceed.

Plaintiff also names Defendant Lashbrook in the policy or practice claim, alleging that she participates in the policy or practice of denying appropriate dental treatment during institutional lockdowns. He alleges that he communicated with Lashbrook multiple times about his need for urgent dental care to no avail. A policy or practice claim against a non-policymaker must rest upon more than an isolated incident of wrongdoing. *See Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2009). However, per the *Glisson* rational, the decision to not create a policy for certain critical care situations could in and of itself be a constitutional violation. For the reasons outlined in regard to Wexford, Plaintiff's claim against Lashbrook in Count 2 will also proceed beyond screening.

**Count 3**

Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause. As such, the alleged mishandling of grievances "by persons who

otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). Plaintiff alleges that Gail Walls harmed him by failing to respond to his grievances. He also alleges that she should have had a practice in place as the Healthcare Administrator to provide needed medical care to inmates during institutional lockdowns. For the reasons set forth with respect to Counts 1 and 2, Count 3 will proceed against Defendant Walls for deliberate indifference to Plaintiff's medical condition.

### Count 4

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). To prevail on a retaliation claim, an inmate must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted).

Plaintiff alleges that he filed grievances about his dental condition, and three defendants responded by taunting him about his condition and indicating that because he grieved their conduct, they would further withhold care. These allegations are sufficient to state a retaliation claim against those defendants. Accordingly, Count 4 will proceed against Defendants Dunn, Hamby, and Lang.

### Disposition

**IT IS HEREBY ORDERED** that **Count 1** will proceed against **Defendants Lashbrook, Asselmeier, McShan, Lee, McWilliams, Chadderton, Dahlem, Dunn, Gregson, Hamby, Kirk, Lang, Marshall, McGhee, Moll, Oakley, Oetjen, Skidmore, Tripp, and Williams.**

**IT IS ORDERED** that **Count 2** will proceed against **Defendants Wexford Health**

**Source, Inc., and Jacqueline Lashbrook.**

**IT IS ORDERED** that **Count 3** will proceed against **Defendant Gail Walls.**

**IT IS ORDERED** that **Count 4** will proceed against **Defendants Dunn, Hamby, and Lang.**

**IT IS ORDERED** that Defendant Steven Newbold is **DISMISSED** without prejudice and the Clerk of Court is **DIRECTED** to **TERMINATE** him as a party in the Court's Case Management/Electronic Case Filing system.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Lashbrook, Asselmeier, McShan, Lee, McWilliams, Chadderton, Dahlem, Dunn, Gregson, Hamby, Kirk, Lang, Marshall, McGhee, Moll, Oakley, Oetjen, Skidmore, Tripp, Williams, Walls, and Wexford Health Source, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or

disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

**IT IS ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: SEPTEMBER 9, 2019**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate Defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, Defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all Defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**