IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TED KNOX, N92676, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-cv-00382-SMY |
| | ) |
| CRAIG ASSELMEIER, | ) |
| TRACY LEE, | ) |
| JAELEN McWILLIAMS, and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on Defendants' Motions for Summary Judgment (Docs. 166, 174), Plaintiff Ted Knox's responses (Docs. 184, 192), Knox's cross-motion for summary judgment against Wexford Health Sources, Inc. (Doc. 176), and Wexford's response (Doc. 191).[1] For the following reasons, Defendant Wexford's motion (Doc. 166) will be granted in part and denied in part, Defendant Lee's motion (Doc. 174) will be denied, and Knox's motion (Doc. 176) will be denied. Claims will proceed against all parties.

## MOTIONS TO SEAL

Knox filed three motions to seal (Docs. 180, 188, 196) concerning the same group of exhibits filed twice in response to Defendants' motions for summary judgment, and once in support of his own motion. The Wexford Defendants filed a motion to maintain the sealed status of two exhibits to their motion for summary judgment (Doc. 183). One of the exhibits (Doc. 169) is a

---

[1] Motions to seal or maintain the seal of various exhibits to the summary judgment motions are also pending and will be addressed (Docs. 180, 183, 188, 196).

one-page excerpt of the Corporate Medical Guidelines that is included within Knox's documents (179, 187 and 185). The second is the IDOC Administrative Directives on lockdowns and dental care. (Doc. 170). A portion of this document is included in Knox's documents (178, 186, and 193).

For his motions, Knox's counsel simply states that ongoing sealed status is sought for three documents because the documents were designated as confidential by Defendants during discovery. One document is a 100-page long redacted copy of Wexford's contract with IDOC (Docs. 177, 185, 193), one is an excerpt of Wexford's Corporate Medical Guidelines on Dental Care (Docs. 179, 187, 195), and the third is an IDOC Administrative Directive on Lockdowns (Docs. 178, 186, 194). Counsel asserts that "it is Defendants' burden to demonstrate a compelling reason to maintain the information contained therein under seal. […] If the Court finds that Defendants have not met their burden, then Plaintiff should be allowed to file these documents in open court." (Doc. 180 at 2). He requests that the documents be provisionally sealed, and that Defendants be given an opportunity to respond about the sealing of the documents. Defendants have not responded to Knox's motions to seal.

The Seventh Circuit has articulated a rigorous standard for sealing documents on the record. While "[s]ecrecy is fine at the discovery stage, before the materials enter the judicial record," "those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l., Inc. v. Abbott Labs*., 297 F.3d 544, 545 (7th Cir. 2002). "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010).

Knox's motions do not meet the afore-mentioned standard. Therefore, the motions (Docs. 180, 188, 196) will be **DENIED** as to Documents 177, 178, 179, 185, 186, 187, 193, 194, and 195. **However, Defendants shall have 14 days to file any additional argument before these documents are unsealed.**

The Seventh Circuit has also emphasized "that litigation be conducted in public to the maximum extent consistent with respecting trade secrets...and other facts that should be held in confidence." *Hicklin Eng'g, L.c. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), abrogated on other grounds by *Americold Realty Trust v. Conagra Foods, Inc.*, 57 U.S. 378 (2016). See also, *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). For its motion, Wexford argues that the Corporate Medical Guidelines on Dental Care depict trade secrets, as defined under the Illinois Trade Secrets Act, 765 ILCS 1065/2(d) (the "Act"):

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, [or] technique...that is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

*Id.*

In analyzing whether an alleged trade secret meets this definition, Illinois courts consider the following factors: "(1) the extent to which the information is known outside of the [movant's] business; (2) the extent to which the information is known by employees and others involved in the [movant's] business; (3) the extent of measures taken by the [movant] to guard the secrecy of the information; (4) the value of the information to the [movant's] business and to its competitors; (5) the amount of time, effort and money expended by the [movant] in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003).

Wexford does not describe the extent to which the information in the document is known outside its business, the extent to which it is known by its own employees, or the amount of time, effort, and money expended in developing the information. Moreover, there is no apparent justification to seal the document when its contents are openly discussed by Wexford in its unsealed summary judgment brief. *See e.g. Vilayhong v. Santos*, 2022 WL 4355844 (S.D. Ill. 2022). For example, in the statement of material facts, Wexford explicitly quoted a provision on periodontal care which states, "teeth with severely advanced periodontal disease will not be treated." (Doc. 167 at ¶ 54). Simply put, the Court cannot reconcile Wexford quoting portions of the one-page document verbatim, while at the same time, arguing that sealing it is critical to protect trade secrets. Accordingly, the Motion to Maintain Sealed Status (Doc. 183) will be **DENIED** as to Document 169.

Wexford also seeks to maintain the sealed status of Document 170, which is a compilation of the IDOC Administrative Directive on Dental Care (Doc. 170 at 1-6), a two-page excerpt of the Wexford-IDOC Contract concerning emergency dental care (Doc. 170 at 7-8), a three-page excerpt of the Illinois Administrative Code (Doc. 170 at 9-11) and a 2016 and 2017 copy of IDOC Administrative Directives on institutional movement during lockdowns (Doc. 170 at 12-31). It offers two reasons the document should be sealed: the Administrative Directives should be sealed because they contain information that could be used to organize a security breach; and the contract excerpt contains trade secrets.

Administrative Directive 04.03.102 (Doc. 170 at 1-6) sets forth the general plan for dental care at IDOC facilities. It is not apparent how any of the information contained in these six pages would present a risk to institutional security. As such, the motion will be **DENIED** as to these

pages. The Court also notes that the contents of this Directive are discussed and quoted in Knox's unsealed response to Wexford's Motion (Doc. 192), and the entire contents of this Directive are already included in the public record at Doc. 176-21.

Next, Wexford seeks to seal a two-page excerpt of its contract with IDOC (Doc. 170 at 7-8). The two pages provide details about the services that vendor (Wexford) must provide, with a focus on the Dental Program. Wexford argues that the contents are a trade secret and should be sealed for the same reasons as Document 169 but does not sufficiently address the previously mentioned factors the Court must consider in relation to 'trade secret' information. Additionally, portions of the contract are discussed or quoted in the unsealed briefing in this case. The Motion to Maintain Seal (Doc. 183) will therefore be **DENIED** as to pages 7-8 of Document 170.

Wexford also seeks to seal three pages of the Illinois Administrative Code on general security (Doc. 170 age 9-11) and a 2016 and revised 2017 copy of Administrative Directive 01.01.301 on Lockdowns (Doc. 170 at 12-31). There is plainly no reason to seal the three pages of the Illinois Administrative Code which are already public record as laws in Illinois. The Administrative Directives on Lockdowns have already been redacted, and Wexford has not provided a sufficient reason to seal these documents. While the Administrative Directive describes permissible movement and stages of lockdown, it does not appear that the documents contain sensitive information that would allow an inmate to endanger the facility. And again, some pages of this Directive have already been included in the public record with Knox's Motion for Summary Judgment. (Doc. 176-25 at 1-8). For these reasons, Wexford's Motion to Maintain Seal (Doc. 183) will be **DENIED** as to Doc. 170 pages 12-31. Out of an abundance of caution, **Defendants shall have 14 days to provide additional argument about this portion of Document 170. If no additional argument is received, the document will be unsealed in the entirety.**

# SUMMARY JUDGMENT

## BACKGROUND

Plaintiff Ted Knox filed an Amended Complaint pursuant to 42 U.S.C. § 1983, alleging deprivations of his constitutional rights at Menard Correctional Center related to an infected tooth that fell out before he was treated on May 18, 2017. (Docs. 1, 79). Following the Court's threshold review and resolution of motions regarding Knox's exhaustion of administrative remedies (Docs. 7, 78, 115), The following claims remain:

> Count 1: Eighth Amendment deliberate indifference for failure to provide timely treatment for Knox's abscessed and infected tooth against Defendants Asselmeier, Lee, and McWilliams.
>
> Count 2: Eighth Amendment deliberate indifference via policy or practice, or lack thereof, of declining appropriate dental care by Defendant Wexford.

Counsel was recruited to assist Knox with this matter in September of 2021, and the case proceeded through discovery. (Doc. 148).

## FACTS

The following facts are undisputed unless otherwise noted: Knox began to seek care for the dental issues in question on April 23, 2017. Menard went on a Level 1 lockdown the same day. (Doc. 176-26 at 2). He asserts he sent a kite for assistance on that date, but the first documented kite was submitted April 30, 2017. Knox was scheduled to be seen on May 11, 2017, but the appointment was cancelled due to institutional lockdown. He was not seen until May 18, 2017, when his tooth fell out.

At that point, Dr. Asselmeier could not mitigate the situation. Knox testified and declared that when Dr. Asselmeier entered the exam room, he told Knox he knew about his complaints since April 2017, but he would always be at the 'back of the line' for treatment. (Knox Dep., Doc.

167-3 at 87:9-23, 88:10-11, 91:21-25; Knox Decl., Doc. 192-1 at ¶ 87). He offered Tylenol and Amoxicillin, and recommended dentures. Knox wanted a second opinion, so Dr. Asselmeier approved him to be seen by Dr. Newbold (a non-party).

Knox asked Defendant Tracy Lee, a lieutenant, for help with his infected tooth on May 8, 2017. Lee recalled that during the encounter, Knox could not talk normally and did not behave like himself. Knox told Lee that his tooth was infected, and that it bled and emitted pus. Knox testified that Lee did nothing to help him. He further supported this assertion with affidavits from his then-cellmate, and a neighbor. (Knox Dep., Doc. 167-3 at 54:19-22, 55:3-4; 58:21-59:3; Decl. of Michael Johnson, Doc. 176-15 at 2; Decl. of E. Hamilton, Doc. 176-14 at 2). Lee testified that in response to Knox's complaints and his own observations, he located a nurse and accompanied her back to Knox's cell to assess his condition. (Lee Dep., Doc. 175-2 at 52:17, 55:2-4, 55:21-23).

Redacted dental records from Menard indicate that although many appointments were rescheduled due to lockdown, some individuals may have received treatment. (Doc. 176-11 at 1-57). For example, the records indicate that two individuals received antibiotics and painkillers on April 26, 2017 (Doc. 176-11 at 13). Additionally, a record appears to reflect that two extractions were performed and Motrin was dispensed on April 27, 2017. (Doc. 176-11 at 6). The same records show that Knox's appointment was cancelled on May 11, 2017, due to the ongoing lockdown. (Doc. 176-11 at 30).

On May 13, 2017, Knox interacted with Defendant Jaelen McWilliams, a behavioral health technician, when McWilliams responded to his request for a mental health evaluation. During the evaluation, Knox told McWilliams about his dental issues, but McWilliams said there was nothing he could do because he was not a dentist. (Knox Dep., Doc. 167-3 at 83:9-15; 84:13-15). Knox

does not know what, if anything, McWilliams did with his dental complaints, but he did not get him any dental help. (*Id.* at 84:13-15). McWilliams testified that he told a sergeant about Knox's dental issue and saw the sergeant go up to Knox to discuss the situation. (McWilliams Dep., Doc. 167-4 at 56:3-11).

In relation to the *Monell* claims against Wexford, the parties submitted evidence including Rule 30(b)(6) depositions of Glen Babich (a regional director for Wexford) and Angela Crain (a healthcare designee for Menard), IDOC Administrative Directives, Wexford contracts and corporate policies, dental records from Menard (for Knox and others), grievance documentation, and additional depositions (citations to this evidence will be provided below in the analysis of the policy claims against Wexford as appropriate).

## DISCUSSION

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the adverse party must identify specific facts in the record showing that genuine issues of material fact exist precluding summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the court "…must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen v. Finantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

### Count 1 – Deliberate Indifference by Individual Defendants

"A prison official violates the Eighth Amendment by acting with subjective 'deliberate indifference' to an inmate's 'objectively serious' medical condition." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022). A prison dentist is generally expected to provide care for an ailment causing serious pain, but an unsubstantiated disagreement with a dentist's chosen course of care does not amount to deliberate indifference. *See e.g., Dobbey v. Mitchell-Lawshea,* 806 F.3d 938, 940 (7th Cir. 2015). A delay in treatment may constitute deliberate indifference if the plaintiff can show that the delay unreasonably prolonged his pain and suffering. *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010) (evidence that the refusal to refer an inmate to a dentist that prolonged pain and suffering for two months was sufficient to proceed beyond summary judgment).

Knox testified at his deposition, and alleged in his declaration, that Dr. Asselmeier knew about his dental condition in April or early May 2017, but allowed his appointment to be cancelled without doing anything to mitigate his pain and suffering. Dr. Asselmeier contends that he was not aware of Knox's condition until he saw him on May 18, 2017. As such, a genuine issue of material fact exists regarding Dr. Asselmeier's knowledge. Summary judgment will be denied on this basis.

As to Defendants Lee and McWilliams, Knox testified that neither individual offered him any assistance, despite acknowledging that he was in obvious distress. Both defendants refute Knox's testimony and claim that they sought care on Knox's behalf and witnessed him interacting with a nurse and sergeant about his dental concerns. This competing evidence presents material issues of fact precluding summary judgment as to Knox's claims against Lee and McWilliams.

**Count 2-*Monell* Claim against Wexford**

Both Wexford and Knox seek summary judgment on the *Monell* claim. In the Amended Complaint, Knox alleges that Wexford caused him harm because they had a policy of not treating teeth in individuals with advanced periodontal disease, and failed to enact a policy to address dental emergencies during lockdowns. With respect to his claim regarding the lack of a policy to address dental emergencies during lockdown, Knox contends: (1) Wexford failed to enact or enforce any policies requiring its dentists to be consulted, or at least advised, when inmates make written or verbal requests for urgent dental care; (2) Wexford failed to enact and enforce a policy requiring its nurses and other staff to follow up with inmates after receiving verbal or written requests for urgent dental care; (3) Wexford failed to enact and enforce any policy requiring its staff to verify that its lockdown information was correct and up to date; (4) Wexford failed to enact and enforce any policy requiring that its dentists be consulted with *prior* to its staff canceling or rescheduling an inmate's request for urgent dental care; and, (5) Wexford failed to enact and enforce a policy requiring the administration of basic checkups and antibiotics and medicine for pain at an inmate's cell when that inmate requests urgent dental care and Wexford's dentists agree that administration of the check and/or basic medicine would benefit an inmate until they can be seen in the healthcare unit (such as, for example, during a Level I lockdown). (Doc. 176 at 18-20).

As an initial matter, Wexford argues that allegations about policies other than those explicitly presented in the Amended Complaint should not be allowed because Knox was denied leave to amend his complaint earlier in the litigation. "When a new argument is made in summary judgment briefing, the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories the plaintiff has pursued so far. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). That is because factual allegations must be

pleaded in a complaint and must remain consistent throughout litigation, whereas legal theories can be altered. *See id.* at 859-60.

In the Amended Complaint, Knox took issue "specifically, [with] the policy/practice to deny examinations and/or medical care to inmates during institutional lockdowns," and described instances during lockdown when he sought treatment for his dental issue but was denied care. (Doc. 79 at ¶¶ 108-118). Although not as artfully pled in the Amended Complaint, the factual bases presented in the Amended Complaint and Motion for Summary Judgment are substantially similar and will be considered.

A prison's medical contractor can be held liable under § 1983 for unconstitutional policies or widespread practices that cause a constitutional injury.[2] *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017). To establish *Monell* liability, a plaintiff must prove the existence an actual policy or custom; that the policy or custom caused the constitutional injury, meaning the custom or policy was the "moving force" behind the injury; and that policymakers were deliberately indifferent to the known or obvious risk that the policy would lead to constitutional violations. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020). A plaintiff may also establish *Monell* liability by showing that there was a situation or dangerous practice that required action, and for which an entity failed to make a policy. *Glisson*, 849 F.3d at 381 (finding that a reasonable jury could conclude that a medical contractor had actual knowledge that its protocols for comprehensive care of chronic illness were insufficient, and that an inmate died as a result of insufficiently coordinated chronic care).

---

[2] In *Monell v. Dept. of Social Services of the City of New York*, the Supreme Court held that a municipality may be liable under § 1983 for constitutional violations resulting from a policy or custom of the municipality. 436 U.S. 658, 690–91 (1978). The Seventh Circuit has extended *Monell* beyond municipalities to include private corporations providing government services, such as Wexford. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

Knox offered evidence of Wexford's policy on teeth impacted by severe periodontal disease, but no evidence that the policy caused him harm. His tooth began to bother him on April 23, 2017 and fell out on May 18, 2017, before any of the Wexford dental providers had a chance to assess his tooth. While the record indicates that Knox was not seen during this period because of an institutional lockdown, and possibly because of breakdowns in the system for inmates to report medical issues during lockdown, neither reason is tied to the policy on periodontal care; the existence of the policy is irrelevant to the harm Knox alleges in this case. Therefore, Wexford is entitled to summary judgment on this point.

The parties dispute many aspects of Knox's claim that Wexford lacked a policy to address dental emergencies during lockdown, and the evidence presents factual disputes for the jury to determine. Knox contends he submitted numerous requests for dental care. One such request was received by the dental unit on May 1, 2017, so he was scheduled for the May 11, 2017, appointment. (Doc. 176-8 at 2). At the time of the appointment, Menard was on a level 4 lockdown (Doc. 176-26 at 3), which would have allowed for the appointment (Doc. 176-25 at 8), but the appointment was nevertheless cancelled on the premise of the ongoing lockdown (Doc. 176-11 at 30). There is no evidence that the appointment was rescheduled. On May 18, 2017, Knox was rushed to the dental unit because his tooth fell out.

The IDOC-Wexford Contract concerning the Dental Program states that the "vendor shall respond to dental emergencies within 24 hours after occurrence with a dentist or suitable healthcare staff." (Doc. 170 at 7). Administrative Directive 04.03.102 classifies bleeding and pain as a Category 1 emergency, and an infection, which if left untreated, would become acutely infected as a Category 2 emergency. (Doc. 170 at 6). The Directive also states, "any offender in a correctional facility experiencing a dental emergency as defined by the staff dentist shall receive

a dental examination no later than the next working day after the emergency occurs." (Doc. 170 at 4). Wexford's Medical Guidelines for dental issues states that dental emergency treatment is "self-explanatory." (Doc. 169 at 1).

Pursuant to Administrative Directive 05.01.301, during a Level 1 lockdown, "the only offender movement shall be for emergency medical attention," and "after an initial 48 hours, health care may occur out of cell with a mandatory call pass as approved by the Chief Administrative Officer." (Doc. 170 at 14). During a Level 4 lockdown (which incorporates the Level 2 direction on medical appointments), out of cell medical services shall be scheduled and shall require a mandatory call pass or escorted line movement. (Doc. 170 at 16, 17).

Menard's Institutional Lockdown Log from 2017 reflects a Level 1 lockdown on April 23, 2017 that transitioned to a Level 4 on April 28, 2017. (Doc. 176-26 at 2). The facility briefly returned to Level 1 for part of May 12, 2017, but returned to Level 4 the same day. (*Id.*). The lockdown ended in some cellhouses by May 15, 2017 and in another by May 18, 2017. (*Id.*).

Major John Michael Carter testified that inmates are allowed to leave their cell for dental emergencies during a Level 1 lockdown, but a medical professional must determine that an emergency exists. (Carter Dep., Doc. 176-24 at 17:3-4, 18:4-5). Security staff do not play a role in determining if an emergency exists, other than that they could report if an inmate was in distress. (*Id.* at 20:19-20). Angela Crain, the 30(b)(6) witness for healthcare at Menard, testified that nurses round in cellhouses three times a day during lockdown and can assess medical issues inmates report, but are not trained regarding dental issues. (Crain Dep., Doc. 176-19 at 20:3-4, 46:11-47:11). Dental hygienists and dentists do not visit the cellhouses. (*Id.* at 46:22).

Wexford's 30(b)(6) witness, Dr. Babich, testified that Wexford does not have explicit policies concerning care in the event of a lockdown. (Babich Dep., Doc. 167-6 at 30:20-23).

During a lockdown, an IDOC scheduling employee communicates with security to determine the impact on movement, and Wexford providers also communicate with that individual about the urgency of appointments. (*Id.* at 32:11-19). The dentist is supposed to be the final decisionmaker on the urgency of appointments, but if scheduling employees or nurses do not relay information or consult with the dentist, then the dentist has no control over the schedule. (*Id.* at 42:19-43:13). A nurse may be sent to assess a patient at the cell front if the dentist needs more information. (*Id.* at 33:12-21). If a dentist cannot see a patient promptly, and there is a bleeding and an infected tooth, the dentist may decide to order an antibiotic and/or painkiller while the inmate waits to be seen. (*Id.* at 60:22-61:6, 93:20-94:8). There is no specific guidelines for Wexford providers to determine what care should be provided during lockdown, "it's based on their clinical judgment." (Babich Dep., Doc. 167-6 at 19:16-17). Babich viewed dental emergencies as something that impacts "life, limb or vision," and is not aware of IDOC policies defining an emergency. (*Id.* at 45:6-17).

Dr. Asselmeier acknowledges that there was no specific policy or procedure for staff to inform him of dental emergencies, yet he was the only one who could officially designate something an emergency and direct that an appointment or appropriate care be coordinated. (Asselmeier Dep., Doc. 167-5 at 28:6-11, 29:2, 42:5-8, 93:17-94:4, 106:1-4).

As was true in *Glisson,* the issue regarding the lack of a policy in this case is nuanced. The lack of a policy to enact IDOC's own directives about emergency dental care does not violate the constitution in and of itself, but "the point is a more subtle one: the existence of [IDOC Guidelines], with which [Wexford] was admittedly familiar, is evidence that could persuade a trier of fact that [Wexford] consciously chose the approach it took. That approach itself may or may not have led to a constitutional violation." *Glisson*, 849 F.3d at 380. In other words, a reasonable jury could

conclude that the lack of a dental emergency notification system for lockdowns created an unreasonable risk of harm for inmates with dental emergencies, and that Wexford was aware of this flaw with the system but failed to take action to mitigate the risk. *See Glisson*, 849 F.3d at 382. Accordingly, neither party is entitled to summary judgment on this issue.

## CONCLUSION

Wexford's Motion for Summary Judgment (Doc. 166) is **GRANTED** solely with respect to the *Monell* claim concerning the periodontal disease policy; it is **DENIED** as to Count 1 against Defendants Asselmeier and McWilliams. Defendant Lee's Motion for Summary Judgment (Doc. 174) is **DENIED**. Knox's Motion for Summary Judgment (Doc. 176) is **DENIED**.

Knox's Motions to Seal (Docs. 180, 188, 196) are **DENIED**. Defendants shall have **14 days** to make any additional argument as to the sealed documents (Docs. 177, 178, 179, 185, 186, 187, 193, 194, 195), failing which the Clerk of Court will be **DIRECTED** to unseal the documents. Defendant Wexford's Motion to Maintain Seal (Doc. 183) is **DENIED**. The Clerk of Court is **DIRECTED to immediately unseal Document 169.** The parties shall have an additional 14 days to supplement their arguments regarding pages 12-31 of Document 170, failing which the Clerk of Court will be **DIRECTED** to unseal the document in its entirety.

**IT IS SO ORDERED.**

**DATED:  March 27, 2023**

>                           *s/ Staci M. Yandle*
>                           **STACI M. YANDLE**
>                           **United States District Judge**